IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dexter Palmer, | ) | C/A No. 8:15-2571-MBS |
|               Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Cecilia Reynolds, | ) | |
| | ) | |
|               Respondent. | ) | |
| _____ | ) | |

Petitioner Dexter Palmer is an inmate in custody of the South Carolina Department of Corrections. Petitioner currently is housed at the Lee Correctional Institution in Bishopville, South Carolina. Petitioner, proceeding pro se, filed a petition for writ of habeas corpus on June 29, 2015, alleging that he is being detained unlawfully. See 28 U.S.C. § 2254.

I. BACKGROUND

At the time of the underlying events, Petitioner and his nephew were living in the Clio section of Marlboro County, South Carolina. According to the nephew, Petitioner and Travis Gallishaw, the victim, went into Petitioner's residence the morning of February 28, 2005. The victim was sitting in the front room while Petitioner went to another room, left the residence, came back into the residence, went to another room, and then came into the room where the victim was sitting. Petitioner, with two guns drawn, indicated to the victim, "Where is my money?" Petitioner shot the victim, who commenced pleading for his life. Petitioner pistol whipped the victim and then choked and killed the victim. Petitioner and his nephew dumped the victim's body near an abandoned road off of Dunbar Highway in Marlboro County. The victim's body was found on March 18, 2005, by realtors viewing the property for sale by the owner. The identity of the victim was made from his fingerprints by the South Carolina Law Enforcement Division (SLED). Further investigation

developed leads to Petitioner. A search warrant was obtained for Petitioner's residence and vehicle, which yielded evidence of the victim's presence. In addition, Petitioner's nephew gave a detailed statement to law enforcement, which information was corroborated by a polygraph examination. Petitioner was charged with murder and carrying a pistol. ECF No. 18-1, 15-18.

Based on the nephew's statements, Petitioner also was charged in Dillon County, South Carolina, with two counts of armed robbery, two counts of possession of a deadly weapon during a violent crime, and assault and battery with intent to kill, which charges arose out of two robberies of a convenience store on Oakland Road on January 29, 2005 and February 15, 2009. Both incidents were captured on videotape but Petitioner and his nephew could not be identified because they wore masks.

During the first incident, Petitioner entered the convenience store with his nephew. Petitioner fired a couple of shots, the nephew got money out of the register, and they left the premises. During the second incident, Petitioner and his nephew again entered the convenience store. When the cashier attempted to run to the back of the store, Petitioner shot her in the leg. The nephew took cash from the register and both men departed.

Because of cooperation between the Marlboro County Sheriff's Office and the Dillon County Sheriff's Office, all the cases were resolved simultaneously ECF No. 18-1, 54-57.

Petitioner appeared before the Honorable James E. Lockemy on October 17, 2005, with respect to the Dillon County charges. Petitioner was represented by Wade Crow, Esquire. The solicitor, Kernard E. Redmond, Esquire, informed the court that, as the result of plea negotiations, the state was recommending twenty-five year sentences as to the armed robbery counts. The solicitor informed Judge Lockemy that he had offered Petitioner a plea agreement in Marlboro County to

voluntary manslaughter with a concurrent twenty-five year term of incarceration if he agreed to cooperate and provide information regarding other matters. Id. at 37. Judge Lockemy, after expressing concerns that the parties lacked a written agreement regarding the Marlboro County murder charge, sentenced Petitioner to twenty-five years incarceration each as to the armed robbery counts; ten to twenty-two years incarceration as to the assault and battery with intent to kill count; and five years incarceration each as to the possession of a deadly weapon during a violent crime counts, all sentences to run concurrently. Id. at 61.

Petitioner did not appear for sentencing on the murder charge until December 6, 2010, when he was brought before the Honorable J. Michael Baxley. Petitioner was represented by Emily Crayton, Esquire of the public defender's office. The solicitor, Mr. Redmond, informed Judge Baxley that the state had served on Petitioner a notice of intention to seek life without the possibility of parole (LWOP) on September 23, 2010. The solicitor indicated that the parties had agreed to a "day-per-day" thirty-year sentence to murder. Judge Baxley conducted a thorough colloquy with Petitioner. Petitioner stated that he understood he was pleading to a charge that, if the court were to accept the recommendation, would result in a sentence of thirty years for murder, to be served day-per-day. Id. at 10. Judge Baxley continued:

> THE COURT: This decision to enter this guilty plea, is it yours or is it someone else's?
>
> MR. PALMER: It's mine.
>
> THE COURT: Has anyone tried to force you to do this?
>
> MR. PALMER: No, sir.
>
> THE COURT: Do you have any family members that you have consulted with about this?

3

> MR. PALMER: No, sir.
>
> THE COURT: And, again, then you are telling me this has been yours and no one else's?
>
> MR. PALMER: Yes, sir.
>
> THE COURT: So, are you telling me that this is your voluntary decision that you, yourself, have made to enter this guilty plea?
>
> MR. PALMER: Yes, sir.
>
> THE COURT: All right. And, I want to ask you about Ms. Crayton's services. Are you satisfied with your lawyer's services[?]
>
> MR. PALMER: Yes, sir.
>
> THE COURT: Do you believe that they have appropriately investigated this matter, and you have had the benefit of their investigation?
>
> MR. PALMER: Yes, sir.
>
> THE COURT: All right, sir. Do you have any complaints about the way they have represented you, because if you do, now would be the time to tell me.
>
> MR. PALMER: None whatsoever.

Id. at 13-14.

After hearing from the victim's family members, who consented to the plea agreement, the court sentenced Petitioner to thirty years incarceration, to be served concurrently with the sentences Petitioner was serving from the Dillon County offenses. Id. at 26. Petitioner did not file a direct appeal of his guilty plea or sentence.

On June 1, 2011, Petitioner filed an application for post-conviction relief (PCR). Petitioner asserted that he received ineffective assistance of counsel with respect to his guilty plea to murder. Petitioner asserted that he had cooperated with law enforcement but was not given the benefit of a

twenty-five year plea to voluntary manslaughter.  Id. at 79-94.

The Honorable R. Ferrell Cothran, Jr. held a hearing on Petitioner's PCR application on July 16, 2013.  Petitioner testified, under questioning from his PCR counsel, that he had complied with the terms of the plea agreement to voluntary manslaughter referenced at his hearing before Judge Lockemy.  Id. at 117.  Petitioner testified that Mr. Crow was relieved as counsel on or about February 5, 2007.  Id. at 121.  Petitioner stated he did not speak to another attorney regarding the Marlboro County charge until approximately two weeks after being served with the state's notice of seeking life without the possibility of parole.  Petitioner testified that he was brought to the courthouse and believed he was going to plead to the twenty-five year sentence to voluntary manslaughter.  However, a public defender told him the solicitor was not going forward with the plea agreement because the family of the victim did not want Petitioner to plead to anything but murder.  Id. at 126-27.

Petitioner testified that he first met Ms. Crayton at the jail approximately one week before his change of plea hearing before Judge Baxter.  According to Petitioner:

> A.  Well, she was talking about me going to trial next week.  I'm like, we can't go to trial next week, you don't know anything about the case.  And she tells me that we can't get a continuance or anything like that, and I asked her about the plea and she supposedly got on the phone and called Mr. Redmond and he says no plea because the victim family and him got into it.  They don't want me to plead to anything but murder.
>
> . . . .
>
> Q.  Okay.  So then I was correct that your understanding was the state would begin the trial on December 13th a week later?
>
> A.  The Monday, yeah.
>
> Q.  Got you, okay.  And that they were seeking a sentence of LWOP if they got a

conviction, correct?

A. Yes, sir.

Q. What did – did Ms. Crayton know anything about your, what defenses you might have had?

A. No, she didn't know anything.

Q. Did she talk to you about what defenses you might have had if you went to trial?

A. Yea, we was going – she was asking me everything, she didn't know anything.

Q. Okay. Did she at some point give you some advice?

A. Yeah. . . . Take the 30 years.

. . . .

Q. Did you tell Ms. Crayton that you had a plea agreement that you had fulfilled your part of?

A, Yes, sir.

Q. Did you tell her what the agreement was?

A. Yes, sir.

Q. Did she advise you to take the murder?

A. Yeah, she told me they could do that.

Q. That they could renege on the plea?

A. I asked her how can they do that. She said they can do that.

Q. Okay. How did you feel about going to trial and facing life without parole?

A. If I went with her I would have had life without parole right now.

Id. at 127-30.

The state called Ms. Crayton to the stand. Ms. Crayton testified that she spoke with

Petitioner on November 30, 2010, and told him that the case was going to trial. She met with him again on December 1, 2010. According to Ms. Crayton:

> . . . At this point the – there wasn't an offer from the state. There was a 25 year offer at one point. Mr. Palmer rejected that offer and the case was set for trial so –
>
> Q. Let me ask you about that before I forget.
>
> A. Okay.
>
> Q. Did you know about the Dillon plea when you were representing him prior to December [6, 2010]?
>
> A. I knew there was, there were – I knew Mr. Palmer was serving time for armed robbery that he received 25 year sentence.
>
> Q. Okay.
>
> A. I knew that there was a plea offer for a 25 years concurrent that Mr. Palmer refused to take. That was my knowledge of that situation. I was not involved in 2005 obviously. . . . He – it's my understanding he rejected the plea offer that was given. The 25 years, he rejected it, so at that point the state sought life without parole and we moved forward planning for his trial.
>
> Q. Who – did Mr. Palmer tell you that he had rejected it?
>
> . . . .
>
> A. I mean, he didn't way the word rejected; I don't believe he would use that term. But he said he wasn't taking a deal. So at that point we were moving forward with trial.

Id. at 143-46.

Ms. Crayton further testified that she and another public defender reviewed the evidence with Petitioner, spoke about the strengths and weaknesses of his case, and discussed the current offer of thirty years incarceration for murder. Ms. Crayton testified that, at Petitioner's request, she made a counteroffer to the Solicitor's Office, which was rejected. According to Ms. Crayton, she met with

Petitioner again the next day, at which time Petitioner stated that he wanted to take the offer of thirty years. Id. at 146-48.

The state called Mr. Redmond to the stand. Mr. Redmond testified that the reason he told Judge Lockemy the parties had a deal for Petitioner to plead to voluntary manslaughter in Marlboro based upon his substantial cooperation was because:

> at the time Mr. Palmer did not want to plea to that charge. And really I did that to help Mr. Crow out because I was hoping – basically what we're saying is, you got these two armed robberies in Dillon that he pled to, and I think in that one a clerk was one of the ones that got shot. He pled to those. We were saying we'll run the voluntary manslaughter concurrent with what he's already pled to, wouldn't have served another day. He would not do it. As a matter of fact, I remember vividly meeting with him – I can't remember whether it was right before the plea in Dillon afterwards – but we met at the Marlboro County Detention Center to discuss, Mr. Crow and I with the defendant, trying to get him to plead to all of the charges, get them all wrapped up. He would not plead to the murder, i.e., the manslaughter charge. So we, in essence, when we did that when we're talking about cooperating and things like that, we were hoping that he would get it and just agree to run it concurrent. And at that time we talked about Mr. Perry [the victim's father]. I had not talked with Mr. Perry because he was in New York. I had talked with the local family, would have been fine. He didn't want to do it. I can get into his, the questions preceding, that was not the only time we had the discussion with the defendant trying to get him to plead guilty and I think that's important from a context standpoint. . . .
>
> . . . .
>
> Q. You're saying that he agreed to plead to the Dillon charges . . . , plead to all those, get 25 years, leaving the voluntary manslaughter pending in Marlboro so he could help law enforcement and then plead to get 25 but he wouldn't do it that day all together?
>
> A. He wouldn't do it that day. He didn't do it when he was brought back before. I believe that was during the time that Mr. Crow got relieved. He wouldn't do it. And again, I can get into this in accordance with your question, but the theme is going to be consistent. He would not plead to the manslaughter. I had even left the manslaughter open after I served him with the notice of intent to seek life without – the LWOP request, life without parole. We brought him back the month before to try to get him to talk to him and plead. . . . He would not do it. So then I served him

8

> with the LWOP, and that is a tactic I've used before. If they don't plead, set it for trial, serve them with the LWOP, but I had given him that opportunity again so that's at least the third time that I can specifically recall having a discussion trying to get him to go ahead and plead to the 25 years on manslaughter. . . .
>
> . . . .
>
> . . . Well, subsequently Mr. Perry calls me and ends up coming down from New York. I think he's a retired city or state employee from New York, and I think he worked with Corrections up there. And he and I had a heart to heart. And let's say he wasn't too thrilled with me and the folks locally who were willing to go along with this. And so in talking with him and since we had given them all of these chances I informed the Public Defender's Office that, you know, I'd have to – it would be murder, you know, 30 years on murder. . . .

Id. at 162-69.

The PCR judge issued an order on September 6, 2010. The PCR judge determined that Petitioner had not met his burden of showing ineffective assistance of counsel. The PCR judge found Petitioner's testimony not to be credible, and the testimony of Ms. Crayton to be credible. The PCR judge found that Petitioner had entered a knowing and voluntary plea to murder and received the benefit of a negotiated sentence of thirty years incarceration. Consequently, the PCR judge denied and dismissed Petitioner's PCR application. Id. at 185-91.

The South Carolina Commission on Indigent Defense filed a Johnson[1] petition for writ of certiorari on Petitioner's behalf, raising the following sole issue:

> Did the PCR judge err in refusing to find counsel ineffective for failing to move to enforce the original plea agreement providing for a sentence of twenty five years concurrent for all of the charges pending in both Dillon and Marlboro counties?

ECF No. 18-3.

Petitioner filed a pro se brief raising the following:

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988).

> Issue (1) Whether the pcr Court's order of dismissal failed to make the required "specific finding of facts" concerning the Petitioner's claim of ineffective assistance of counsel pursuant to S.C. Code Ann. § 17-27-80?
>
> Issue (2) Whether the pcr Court's order of dismissal failed to make the required "specific finding of facts" concerning the Petitioner's claim of counsel's ineffectiveness, for failing to move to enforce the original plea agreement providing for a sentence of twenty five (25) years concurrent for all of the charges in both Dillon and Marlboro counties?
>
> Issue (3) Whether the pcr Court's order of dismissal failed to make the required "specific findings of facts" concerning the Petitioner's claim of Breach of plea agreement?

ECF No. 18-5.

By order dated December 4, 2014, the South Carolina Supreme Court denied the petition. ECF No. 18-6. Remittitur was issued on December 22, 2014. ECF No. 18-7.

In his § 2254 petition filed June 24, 2015, Petitioner raises the following grounds for relief:

> Ground One:   Petitioner was denied effective assistance of counsel at Plea hearing.
>
> Ground Two:  Denial of effective Assistance of Counsel failure to challenge Prosecutions Breach of contract
>
> Ground Three: Breach of Plea Agreement/contract law

ECF No. 1, 5-8.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for a Report and Recommendation. The petition is governed by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996.

Respondent filed a motion for summary judgment on October 13, 2015. By order filed October 14, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was

advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on February 22, 2016, to which Respondent filed a reply on March 3, 2016. On July 14, 2016, the Magistrate Judge issued a Report and Recommendation in which she determined that the PCR judge's findings and conclusions were supported in the record and not contrary to established law as to Grounds One and Two. The Magistrate Judge further determined that Ground Three is procedurally barred to the extent it is cognizable in this action. Accordingly, the Magistrate Judge recommended that Respondent's motion for summary judgment be granted. Petitioner filed objections to the Report and Recommendation on September 12, 2016.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. Id.

## II. DISCUSSION

A writ of habeas corpus shall not be granted for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The limited scope of federal review of a state petitioner's habeas claims is grounded in fundamental notions of state sovereignty. Richardson v. Branker, 558 F.3d 128, 138 (4th Cir. 2012) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)). When a federal court adjudicates a habeas corpus petition brought by a state prisoner, that adjudication constitutes an intrusion on state sovereignty. Id. (citing Harrington, 562 U.S. at 103). A federal court's power to issue a writ is limited to exceptional circumstances, thereby helping to ensure that "'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'" Id. (citing Harrington, 562 U.S. at 103). The restrictive standard of review "'further[s] the principles of comity, finality, and federalism.'" Id. (citing Williams v. Taylor, 529 U.S. 362, 364 (2000)). "'The pivotal question is whether the state court's application of the [applicable federal legal] standard was unreasonable.'" Id. (quoting Harrington, 562 U.S. at 103). So long as fairminded jurists could disagree on the correctness of a state court's decision, a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. Id. (citing Harrington, 562 U.S. at 102).

A.   Ineffective Assistance of Counsel (Grounds One and Two)

Petitioner contends that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner first must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687–88. In making this determination, a court considering a habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689. However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Id. at 691-92 (citing United States v. Morrison, 449 U.S. 361, 364–65 (1981)). "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692.

In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court discussed the application of the rule regarding deficient performance in cases where the defendant does not go to trial, but instead enters a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 57-59 (internal citations omitted).

Petitioner contends that the Magistrate Judge erred in concluding Grounds One and Two are without merit. Petitioner states as follows:

> Petitioner would like to direct the Court's attention to his writ of Certiorari brief wherein he explains how in fact counsel was ineffective as [to] his representation. The Magistrate Judge relies up Strickland v. Washington, Hill v. Lockhart, and Brady v. US. It is well known that the prong set forth in these cases are near to impossible

to overcome, which within itself is prejudice act on the behalf of the Magistrate Judge.

ECF No. 39, 11.

The district court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982). Nevertheless, the court has thoroughly reviewed the record. The PCR judge's findings and conclusions did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner's objection is without merit.

B.   Breach of Plea Agreement (Ground Three)

Petitioner contends the Magistrate Judge erred in determining that Ground Three is procedurally barred because it was not ruled on by the PCR judge. Petitioner contends that he pointed out to the PCR counsel that the issue had not been addressed by the PCR judge, and that he should not be faulted for the acts of an attorney who abandoned him.

Federal courts must rigorously enforce the total exhaustion rule in order to give state courts the first opportunity to review all claims of constitutional error. Rose v. Lundy, 455 U.S. 509, 519 (1982). The Supreme Court has explained that:

> strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition. To the extent that the exhaustion requirement reduces piecemeal litigation, both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.

14

Id. at 520.

Petitioner is required to squarely present all issues to the South Carolina appellate courts to avoid procedural default upon federal habeas review. See Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999).

As the Magistrate Judge properly found, Petitioner failed to preserve this issue for appellate review, and failed to establish either actual prejudice or that a fundamental miscarriage of justice will occur if the procedural fault is not excused. See Wainwright v. Sykes, 433 U.S. 72, 84 (1977). Even if the court were to address the merits of Ground Three, Petitioner cannot prevail. The PCR judge found credible the testimony of Ms. Crayton and Mr. Edmond that no plea agreement regarding a twenty-five year sentence for voluntary manslaughter was formed because Petitioner refused to accept the offer. The PCR judge's findings are supported by the record, and the court must presume state court factual determinations to be correct. 28 U.S.C. § 2254(e)(1). Petitioner's objection is without merit.

### III. CONCLUSION

For all these reasons, the court concludes that the PCR judge's rulings were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Respondent's motion for summary judgment (ECF No. 18) is **granted**. Petitioner's § 2254 petition is denied and dismissed, with prejudice.

### CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that Petitioner has not made the requisite showing.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

September 27, 2016

**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**